**EXHIBIT A**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x

COMMUNITY HEALTH CENTER, INC.,:

      Plaintiff,       :

  -vs-                          : CHANCERY NO. 172862

PATRICIA WILSON-COKER, J.D.,   :

M.S.W., COMMISSIONER OF THE    :

STATE OF CONNECTICUT           :

DEPARTMENT OF SOCIAL SERVICES,:

      Defendant.       :

- - - - - - - - - - - - - - - - x

                Baltimore, Maryland

                Thursday, September 25, 2003

Deposition of:

                RHONDA RHODES

    A witness, called for examination by counsel for the plaintiff, pursuant to notice, at 7500 Security Boulevard, Baltimore, Maryland, beginning at 1:38 p.m., before JOSEPH A. INABNET, a Court Reporter and Notary Public in and for the State of Maryland at Large.

COPY

Page 4

1    Thereupon,

2                    RHONDA RHODES

3         A witness, called for examination by

4    counsel for the plaintiff, having been first duly

5    sworn by the notary public, was examined and

6    testified as follows:

7         EXAMINATION BY COUNSEL FOR THE PLAINTIFF

8    BY MR. FELDSMAN:

9         Q.   Ms. Rhodes, would you please indicate

10   your name and where you are currently employed?

11        A.   Rhonda, R-H-O-N-D-A, Sturgill,

12   S-T-U-R-G-I-L-L, Rhodes, R-H-O-D-E-S.

13             And I am employed with the Centers for

14   Medicare and Medicaid Services.

15        Q.   Your position there is what?

16        A.   I am the director of the Division of

17   Benefits, Coverage, and payment, and the Family and

18   Children's Health Programs Group in the Center for

19   Medicaid State Operations.

20        Q.   And you work for the Medicaid program.

21   Is that correct?

22        A.   Correct.   CMSO is the Medicaid portion of

COMMUNITY HEALTH CENTER                    RHONDA RHODES
VS. PATRICIA WILSON-COKER, ET AL.          SEPTEMBER 25, 2003

Page 44

1        It would have had to have been changed
2   through another issuance.
3        The Qs and As with regard to caps and
4   screens reiterated longstanding policy, which was
5   enunciated in this letter.
6        To repudiate longstanding policy, it
7   would not take the form of a Q and A.  It would
8   take the form of a new policy guidance.
9        Q.   Who would be responsible in the CMS
10  bureaucracy for generated that kind of policy
11  guidance?
12       A.   The state Medicaid director letters?
13       Q.   Yeah.
14       A.   They are generated at the staff level.
15       Q.   So in theory, if your office felt screens
16  were unfair or undoable, your office could have at
17  least generated a letter?
18       A.   Correct.
19       Q.   And yet you didn't do it?
20       A.   We did not.
21       Q.   Why not?
22       A.   We did not see any reason to overturn the

Page 45

1    current policy.

2        Q.   Was there no one you consulted with who
3    said the current policy who was critical of the
4    current policy on caps and screens?

5        A.   Actually, no.

6        Q.   The National Association of Community
7    Health Centers told you caps and screens were
8    hunky-dorey?

9        A.   In a communication we received from them,
10   they actually stated, yes, that caps and screens
11   were fine in terms of computing the average costs
12   for '98, '99, yes.

13       Q.   They took no issue with the use of caps
14   and screens?

15       A.   Not in that document that they
16   transmitted to us, no.

17       Q.   Who signed the document?  Do you
18   remember?

19       A.   No, I don't remember who signed it.

20       Q.   So no one was critical of caps and
21   screens.

22            Is that what you are saying?

Page 57

1  in conjunction with the old language and whether or
2  not we should disallow those federal funds --
3         Q.    All right.
4         A.    -- if a finding of noncompliance is
5  found.
6         Q.    All right.  And suppose the state in this
7  hypothetical again, the state jumps the gun and is
8  harsher on providers in a reimbursement manner than
9  its prior plan.
10              The providers, do you direct the state to
11 pay providers the difference?
12        A.    In other words, if we found a state out
13 of compliance with the --
14        Q.    Yeah.  Well, the state would be out of
15 compliance if it implemented before it amended its
16 plan, would it not?
17        A.    We would do an investigation.  It's not a
18 given that they are automatically out of
19 compliance.
20        Q.    I'm asking you to assume that they would
21 be.
22        A.    If we found them out of compliance --

1   what's the question again if we found them out of
2   compliance?
3        Q.   Let's say they -- let's have the result,
4   there was a -- a hospital lost a thousand dollars
5   as a result of the state in effect jumping the gun
6   and not getting a plan amendment.
7             Would you direct the state to reimburse
8   the hospital a thousand dollars?
9        A.   That's going to be on a case-by-case
10  basis.
11            It would not be in general -- I couldn't
12  answer that in a general way.
13       Q.   And what would determine whether there
14  would be such a direction?
15       A.   The facts of the matter at hand.
16       Q.   Would that be your responsibility?  Your
17  office's responsibility?
18       A.   In conjunction -- the region -- the
19  regional office would become involved.  We would
20  become involved, yes, as well as another group
21  within the Center for Medicaid and State
22  Operations, which is the Finance Systems Budget

## CERTIFICATE OF NOTARY PUBLIC

I, Joseph A. Inabnet, the officer before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn by me; that the testimony of said witness was taken by me in Stenotype and thereafter reduced to typewriting under my supervision; that said deposition is a true record of the testimony given by said witness; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken; and further, that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.



_____
Joseph A. Inabnet, Notary Public
for the State of Maryland

My Commission Expires: January 29, 2007